James D. Pacitti, Esq. (SBN: 248696)
Krohn & Moss, Ltd.
10474 Santa Monica Blvd., Suite 401
Los Angeles, CA 90025
Tel: 323-988-2400
Fax: 866-385-1408
jpacitti@consumerlawcenter.com
Attorneys for Plaintiff, ERIN O'DONNELL

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ERIN O'DONNELL, | Case No.: 2:10-cv-08162-JFW-CW |
| Plaintiff, | **NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AND SUPPORTING MEMORANDUM OF LAW** |
| v. | |
| TAKHAR COLLECTION SERVICES, LTD., | **Date:   February 14, 2011**<br>**Time: 1:30 pm**<br>**Room: 16** |
| Defendant. | **Honorable John F. Walter** |

**TO ALL PARTIES AND ATTORNEYS OF RECORD:**

    **NOTICE IS HEREBY GIVEN** that on **February 14, 2011** at **1:30 pm**, in **Room  16** of the above-mentioned courthouse located at the United States District Courthouse, 312 North Spring Street, Los Angeles, California 90012, Plaintiff's Motion For Entry Of Default Judgment against Defendant, will be heard. Plaintiff files this motion based upon this notice, the memorandum of points and authorities, and the attached exhibits, and all files, pleadings and records in this action.  This motion is made following multiple efforts to meet and confer pursuant to L.R. 7-3.

## MEMORANDUM OF POINTS AND AUTHORITIES
## PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

Plaintiff, ERIN O'DONNELL, respectfully requests this Honorable Court to enter Default Judgment against Defendant, TAKHAR COLLECTION SERVICES, LTD. (Defendant), and to award Plaintiff $4,567.50. As discussed below, the factors outlined in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) support granting default judgment against Defendant in the amount of $4,567.50.

### I.     BACKGROUND

Plaintiff filed a Two-Count Complaint against Defendant. Count I of Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, *15 U.S.C. §1692d, §1692d(5) and §1692e(11)* of the FDCPA. Count II of Plaintiff's Complaint is based on the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code *§1788.11(d) and §1788.17* of the RFDCPA. In her Complaint, Plaintiff alleges: (1) Defendant constantly and continuously placed collection calls to Plaintiff seeking and demanding payment for an alleged debt; (2) Defendant called on an almost daily basis, multiple times per day, for a period of months; (3) Defendant failed to disclose it was a debt collector seeking and attempting to collect a debt.

On December 8, 2010, pursuant to Federal Rule of Civil Procedure (FRCP) 55(a), the clerk entered an order defaulting Defendant for failing to respond to Plaintiff's Complaint. Now, pursuant to FRCP 55(b)(2), Plaintiff respectfully requests this Honorable Court to enter default judgment against Defendant.

Plaintiff states the following: (1) On December 8, 2010, the clerk entered an order defaulting Defendant; (2) The clerk entered an order defaulting

- 2 -

Defendant for Defendant's failure to respond to Plaintiffs' Complaint; (3) The defaulting party is not an infant or an incompetent person; (4) The Service Members Civil Relief Act (50 App. U.S.C. §521) does not apply; and (5) Notice of the Motion for Entry of Default Judgment has been served on Defendant, the defaulting party, by means specified in the attached Proof of Service.

Accordingly, Plaintiff seeks default judgment against Defendant in the amount of $4,567.50, itemized as follows: $2,000.00 in statutory damages to Plaintiffs pursuant to the FDCPA, *15 U.S.C. 1692k(a)(2)A* and pursuant to the RFDCPA, Cal. Civ. Code §§1788.30(b) and 1788.32; $2,217.50 in Attorneys' fees; and $350.00 in filing fees. As discussed below, the *Eitel* factors support granting default judgment against Defendant in the amount of $4,567.50.

## II.  PLAINTIFF'S COMPLAINT STATES A STRONG CLAIM FOR RELIEF

The first two *Eitel* factors require Plaintiff's Complaint to sufficiently state a claim for relief. *PepsiCo, Inc. v. Cal Sec. Cans,* 238 F. Supp.2d 1172, 1175 (C.D. Cal. 2002). Once the clerk enters default, Plaintiff's factual allegations are taken as true. *Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-918 (9th Cir. 1987).

Here, Plaintiff alleges the following in her Complaint: (1) Defendant constantly and continuously placed collection calls to Plaintiff seeking and demanding payment for an alleged debt; (2) Defendant called on an almost daily basis, multiple times per day, for a period of months; (3) Defendant failed to disclose it was a debt collector seeking and attempting to collect a debt. Therefore, Plaintiff's allegations sufficiently prove Defendant violated the FDCPA.

**III.   PLAINTIFF'S REQUEST FOR MONETARY JUDGMENT IS REASONABLE**

Plaintiff seeks default judgment against Defendant in the amount of $4,567.50, itemized as follows: $2,000.00 in statutory damages to Plaintiff pursuant to the FDCPA, *15 U.S.C. 1692k(a)(2)A and Cal. Civ. Code §§1788.30(b) and 1788.32*; $2,217.50 in attorneys' fees; and $350.00 in filing fees pursuant to 15 U.S.C. § 1692(k)(a)(3) and Cal. Civ Code *§1788.30(c)*.

**A.   PLAINTIFF'S REQUEST FOR STATUTORY DAMAGES IS REASONABLE**

The FDCPA allows "in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(2)(A). Further, the RFDCPA states that the amount of liability shall be "for a penalty in such amount as the court may allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000)" Cal Civ. Code §1788.30(b). Furthermore, "the remedies provided herein are intended to be cumulative and are in addition to any other procedures, rights, or remedies under any other provisions of law" Cal. Civ. Code §1788.32. Therefore, an award of $2,000.00 to Plaintiff in this case is permissible and seems appropriate based on the factual allegations in Plaintiff's Complaint.

**B.   PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES AND COSTS IS REASONABLE**

Plaintiff requests $2,217.50 in attorneys' fees.   Plaintiff is entitled to attorneys' fees in this matter, specifically $2,217.50, based on the reasons below.

1

## 1.   PLAINTIFF IS ENTITLED TO COSTS AND ATTORNEY'S FEES PURSUANT TO THE FDCPA.

The specific statutory language of the FDCPA, and the public policy considerations in support of this Act, entitle Plaintiff to recover her attorneys' fees and costs.  15 U.S.C. §1692k(a) states:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable . . . in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

Pursuant to this specific language, the federal courts have long recognized the importance of the fee-shifting provision of the FDCPA, as well as the public policies behind it.  In *Tolentino v. Friedman*, (7th Cir. 1995) the court affirmed that a separate award for costs and fees is mandatory.

> Given the structure of the section, attorneys' fees should not be construed as a special or discretionary remedy; rather, the act mandates an award of attorneys' fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general. *Tolentino v. Friedman*, 46 F.3d 645, 651-652 (7th Cir.1995).

Plaintiff's entitlement to her reasonable fees and costs has been reaffirmed by the Ninth Circuit Court of Appeals as recently as April 2008, where the Court once again ordered that the determination of fees and costs is mandatory by the district courts.  "The FDCPA's statutory language makes an award of fees mandatory. The reason for mandatory fees is that Congress chose a 'private attorney general' approach to assume enforcement of the FDCPA."  *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *see also Graziano v. Harrison*,

- 5 -

950 F.2d 107 (3d Cir.1991) (noting that the FDCPA mandates an award of attorneys' fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general).

The *Tolentino* Court also noted Congress's specific intent to allow an individual plaintiff the ability to pursue an action where the burden of fees and costs would otherwise economically preclude this type of rights enforcement. *Tolentino* at 652 *citing City of Riverside v. Rivera*, 477 U.S. 561 (1986)). "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms and congress has determined that the public as a whole has an interest in the vindication of the statutory rights." *Id.* The court held similarly in *Camacho* when it rejected the District Court's "flat-fee" approach, and in its remand for further findings directed that "[T]he amount of [attorneys' fees] must be determined on the facts of each case." *Camacho* at 978.[1]

The FDCPA mandates that the recovery of Plaintiffs' attorneys' fees and costs is integral to the success of the policy goals of the FDCPA. Therefore, Plaintiffs should be awarded reasonable attorneys' fees and costs as determined by this Honorable Court.

---

[1] "The [District] Court concluded that "[w]here ... the attorneys seeking fees support their motion with materials that are substantially unchanged from those filed by them in numerous other cases ... it would be inappropriate to award fees on fees on an hourly basis," and instead, the court awarded a "flat award" of $500." *Camacho* at 976. However, the Ninth Circuit Court of Appeals rejected this approach and remanded for a case-by-case determination of attorneys' fees.

- 6 -

### 2. PLAINTIFF IS ENTITLED TO HER ATTORNEYS' FEES AND COSTS BECAUSE PLAINTIFF IS THE PREVAILING PARTY IN THIS ACTION.

"[I]n order to encourage private enforcement of the law . . . Congress legislated that in certain cases prevailing parties shall recover their attorneys' fees from the opposing side. When a statute provides for such fees, it is termed a 'fee-shifting' statute. The FDCPA is one such statute, providing that any debt collector who fails to comply with its provisions is liable in the case of any successful action ... [for] the costs of the action, together with a reasonable attorneys' fee as determined by the Court." *Camacho* at 978 *citing Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir.2003) and 15 U.S.C. § 1692k(a)(3)).

In support of this Congressional mandate, federal appellate courts have long upheld a plaintiffs' recovery of attorneys' fees and costs after the entry of judgment in plaintiff's favor. *See*, e.g., *Webb v. James*, 147 F.3d 617 (7th Cir. 1998) (awarding attorneys' fees under the underlying statute after plaintiff accepted defendant's Federal Rule 68 Offer of Judgment) and *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830 (9th Cir. 1997) (same). For example, the United States Ninth Circuit Court of Appeals has expressly held that an enforceable private settlement agreement requiring a defendant to pay money to a plaintiff, where the district court retains jurisdiction to determine fees, entitles the plaintiff to statutory fees and costs as the prevailing party. *See Barrios v. California Interscholastic Federation*, 277 F.3d 1128 (9th Cir. 2002).

### 3. PUBLIC POLICY SUPPORTS AN AWARD OF ATTORNEYS' FEES AND COSTS.

"The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to insure those debt collectors who refrain from using abusive debt

1   collection practices are not competitively disadvantaged, and to promote consistent
2   State action to protect consumers against debt collection abuses.  Congress found
3   such abuses by debt collectors to be serious and widespread." *Foti v. NCO*
4   *Financial Systems, Inc.*, 424 F.Supp.2d 643, 653 (S.D.N.Y. 2006) *citing* 15 U.S.C.
5   § 1692(e) and *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir.1996).[2]  The fee-
6   shifting provision contained in the FDCPA, therefore, enables consumers to
7   vindicate their personal rights, while benefiting society in general, and thus,
8   resulting in greater deterrence of fraudulent and deceptive business practices.

9          Further, the difficulty in private attorneys general actions, such as the
10  FDCPA and similar state enacted statutes, is that the potential for recovery is not
11  clear at the time the litigation is commenced, unlike, for example, in personal
12  injury actions.  *Bowers v. Transamerica Title Insurance Company*, 675 P.2d 193,
13  204 (Wash. 1983).  Additionally, the amount in controversy is usually too small to
14  induce an attorney to commence litigation on a contingency-fee agreement.
15  Accordingly, "[T]he purpose of the statutory fee award is to benefit the plaintiff by
16  allowing the plaintiff to obtain counsel in order to pursue redress for relatively
17  small claims."  *Majcher v. Laurel Motors, Inc.*, 287 Ill.App.3d 719, 680 N.E.2d
18  416 (Ill. Ct. App. 1997); *See also Ford Motor Co. v. Mayes*, 575 S.W.2d 480, 488
19  (Ky. Ct. App. 1978).  By providing the private bar with an incentive to involve
20  itself in consumer litigation through a fee-shifting provision, the government is
21
22  _____
23  [2] Pursuant to the express intent of Congress in enacting the FDCPA, "It is the
    purpose of this subchapter to eliminate abusive debt collection practices by debt
24  collectors, to insure that those debt collectors who refrain from using abusive debt
    collection practices are not competitively disadvantaged, and to promote consistent
25  State action to protect consumers against debt collection abuses."  15 U.S.C. §
    1692(e).

- 8 -

1   relieved of the costs of protecting consumers while ensuring that consumers may

2   still avail themselves of their statutory rights.

3       Without a sufficient award of attorneys' fees and costs, the statutory remedy

4   would simply not make the consumer whole as the average consumer would

5   simply be unable to pay his or her attorneys' fees and costs.  This result would

6   create a deterrent for the private bar to pursue an action for which Congress has so

7   emphatically dictated the importance.  This sort of "chilling effect" would counter

8   the purpose of the statute, which, when coupled with the provision awarding

9   attorneys' fees, "is to encourage consumers to file actions to vindicate their rights."

10  *Grove v. Huffman*, 262 Ill. App.3d 531, 539, 634 N.E. 2d 1184, 1190 (Ill. Ct. App.

11  1994).   The attorneys'-fees provision is in place to remove the difficulty of

12  obtaining counsel in pursuing claims which are relatively small compared to

13  potential legal costs.  *Id.* at 539.  As a result, public policy dictates that attorneys'

14  fees should be paid by the Defendant.

15         **4.**    **IN CONSUMER PROTECTION ACTIONS IT IS <u>NOT</u>**

16             **APPROPRIATE TO ASSESS A FEE AWARD BASED**
           **UPON THE PROPORTIONALITY OF THE**

17             **ATTORNEYS' FEES EXPENDED TO THE AMOUNT OF**

18             **PLAINTIFF'S RECOVERY.**

19      Courts throughout the nation have recognized that in consumer actions, it is

20  not appropriate to calculate an attorneys' fee award based upon the amount

21  recovered by the plaintiff.  The fact that the amount recovered by the plaintiffs may

22  be disproportionate to the amount of attorneys' fees sought does not make the fees

23  expended unreasonable.   As such, the fees awarded should not be reduced to

24  maintain some ratio between the attorneys' fees and underlying compensatory

25  damages.  *See Bryant v. TRW*, 689 F.2d 72 (6th Cir. 1982);  *Washington v.*

*Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1041-42 (3d Cir.

MOTION FOR ENTRY OF DEFAULT JUDGMENT

1996);   *Jones v. Credit Bureau of Greater Garden City*, 1989 WL 134945 (D. Kan. 1989);   and *Northrup v. Hoffman of Simsbury, Inc.*, 2000 WL 436612 (D. Conn. 2000).[3]

**5.   THE RATES SOUGHT BY PLAINTIFF'S ATTORNEYS ARE REASONABLE AND COMMENSURATE WITH THEIR EXPERIENCE IN THE FIELD OF CONSUMER PROTECTION.**

Plaintiff seeks an award of attorneys' fees and costs in the amount of $2,567.50, comprised of 9.1 hours of attorney and paralegal/clerk time at hourly rates ranging from $125.00 per hour to $325.00 per hour.   (See Statement of Services attached as Exhibit A and Attorney Biographies attached as Exhibit B). Specifically, Plaintiff seeks to recover attorney's fees for James D. Pacitti and Christopher G. Addy at rates of $325.00 per hour for 3.1 hours and $225.00 per hour for 4.6 respectively; and fees for work performed by paralegals at $125.00 per hour for 1.4 hours.   The hourly rates of Plaintiff's attorneys delineated in Plaintiff's

---

[3] *See also Goins v. JBC & Associates, P.C.*, 2006 WL 540332, at *3 (D. Conn. Mar. 6, 2006) (FDCPA plaintiff's counsel awarded $23,421.00 in fees and $895.19 in costs where underlying matter was settled for $1,500.00); *Dechert ex rel. Estate of Oyler v. The Cadle Co.*, 2004 WL 2999112 (S.D. Ind. Nov. 10, 2004) (FDCPA plaintiff awarded $54,391 in fees on a $1,000.00 statutory recovery); *Gradisher v. Check Enforcement Unit*, 2003 WL 187416 (W.D. Mich. Jan. 22, 2003) (attorney's fees award of $69,872.00 where plaintiff recovered FDCPA statutory damages of $1,000.00); *Armstrong v. Rose Law Firm, P.A.*, 2002 WL 31050583 (D. Minn. Sept. 5, 2002) (attorney's fee award of $43,180.00 where plaintiff recovered the maximum FDCPA statutory damages of $1,000.00); *Minnick v. Dollar Financial Group, Inc.*, Civ. No. 02-1291, 2002 WL 1023101, 52 Fed. R. Serv.3d 1347 (E.D. Pa. May 20, 2002) (consumer-plaintiff in FDCPA action awarded $7,208.50 in fees and costs after accepting $2,000 offer of judgment);   and *Norton v. Wilshire Credit Corp.*, 36 F.Supp. 2d 216 (D.N.J. 1999) (court awarded $57,000.00 in fees for $5,800.00 award to plaintiff in FDCPA action).

- 10 -

Statement of Services are commensurate with the experience and training of each employee at K&M. These rates are also supported by the 2008 Consumer Law Attorney Fee Survey, the 2007 National Law Journal Survey, and the United States Attorney's Office and the "Laffey Matrix."

### i. The experience of the attorneys at K&M provide support for the hourly rates requested

The experience of the attorneys that worked on behalf of Plaintiff is detailed in the biography statement of Plaintiff's attorneys (attached as Group Exhibit B), and is further supported by K&M's attorneys' declarations (attached as Group Exhibit C).

### ii. The rates sought by K&M are reasonable as evidenced by the 2008-2009 Consumer Law Attorney Fee Survey

In the fall 2008, a survey was conducted of consumer advocates across the country to determine the rates charged by attorneys practicing in the area of consumer protection by an "attorney's years in practice, location of practice, and size of firm." (See 2008-2009 Consumer Law Attorney Fee Survey attached as Exhibit D). The attached survey supports the billing rates requested as the average billing rate data in the survey, grouped by both region and years in practice, is consistent with those rates. Data collected for the California region arranged by years in practice without regard to firm size (survey page 14) shows the average rate for attorneys with 11-15 years in practice to be $412/hr, attorneys practicing 3-5 years to be $320/hr, and attorneys practicing 1-3 years to be $279/hr. As such,

MOTION FOR ENTRY OF DEFAULT JUDGMENT

the rates requested by Plaintiff's attorneys are commensurate with other consumer attorneys' billing rates, indexed by both region and years in practice, and therefore, should be determined by this Court to be reasonable.

 iii. **The Rates Sought by K&M are lower than the Mean Billing Rates Compiled in *The National Law Journal's* 2007 Billing Survey for Associates and Partners in Law Firms Throughout the Country Including California[4]**

*The National Law Journal's* 2007 Billing Survey also demonstrates the reasonableness of the rates sought by Plaintiff.   For twenty-five (25) years, *The National Law Journal* has been providing the legal community with news, commentary, and analysis on lawyers and the law.   See *The National Law Journal's Website* at http://www.law.com/jsp/nlj/utility/about.jsp.   *The National Law Journal* provides timely legal information of national importance to attorneys concerning federal circuit court decisions, verdicts, practitioners' information, legislative issues, and legal news for business and private sectors.   *Id.*   *The National Law Journal's* 2007 survey of billing rates of the largest U.S. law firms provides the High, Average, and Low rates for partners and associates at over 100 firms.

---

[4]  Law firms participating in the survey include firms from Costa Mesa, Los Angeles, Mountain View, Riverside, San Diego, and San Francisco, California.

As evidenced by taking an average of the California law firms surveyed by *The National Law Journal*, the rates charged by Krohn & Moss, Ltd. are commensurate, if not lower, then average rates charged by other firms in California:

- Average Partner Billing Rate Low: $414/hr

- Average Partner Billing Rate High: $728/hr

- Average Partner Billing Rate Mean: $531/hr

- Average Associate Billing Rate Low: $234/hr

- Average Associate Billing Rate High: $458/hr

- Average Associate Billing Rate Mean: $340/hr

These rates reflect the growing increase in rates as charged by law firms in the California area. (See Article from National Law Journal attached as Exhibit E). Commenting on the Survey, Leigh Jones, of *The National Law Journal*, wrote in her December 11, 2007, article for the *Journal*, "billing rates shot up in 2007, with approximately three-quarters of the law firms that participated in *The National Law Journal's* annual survey boosting the amounts they charged for partner and associate services."

///

///

- 13 -

6.    **The rates sought by K&M are reasonable as evidenced by the United States Attorney's Office and the "Laffey Matrix."**

The attorneys' fees rates requested by Plaintiff, as detailed in Plaintiff's Statement of Services, are commensurate with the prevailing rates for attorneys that practice federal law. As the case at bar was filed pursuant to a federal remedial statute, the FDCPA, rates charged by other attorneys practicing federal law may be compared to determine an appropriate rate. *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983). In *Laffey*, the court compared rates of attorneys practicing federal claims with fee-shifting provisions to reach a hybrid rate. *Id.* The Court's analysis in *Laffey* was taken one step further by the Civil Division for the United States Attorney's Office to reflect how rates have changed over the years due to inflation. In doing so, the United States Attorney's office created the "Laffey Matrix." As demonstrated by the "Laffey Matrix," the rates sought by Plaintiff's attorneys here are commensurate with recognized rates for attorneys with similar experience. The "Laffey Matrix," when coupled with the declarations presented by Plaintiff and detailed biographies of Plaintiff's attorneys at K&M, provides conclusive evidence that the rates sought by Plaintiff's attorneys are reasonable. The "Laffey Matrix" is incorporated into this Fee Petition in its

- 14 -

entirety       and       can       be       found       online       at
http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_8.html [5]:



### Civil Division - LAFFEY MATRIX 2003-2010

(2009-10 rates are unchanged from 2008-09 rates)

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

---

[5] This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does *not* apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey v. Northwest Airlines, Inc.,* 572 F. Supp. 354 (D.D.C. 1983).

| Experience | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 |
|---|---|---|---|---|---|---|
| 20+ years | 390 | 405 | 425 | 440 | 465 | 465 |
| 11-19 years | 345 | 360 | 375 | 390 | 410 | 410 |
| 8-10 years | 280 | 290 | 305 | 315 | 330 | 330 |
| 4-7 years | 225 | 235 | 245 | 255 | 270 | 270 |
| 1-3 years | 185 | 195 | 205 | 215 | 225 | 225 |
| Paralegals & Law Clerks | 110 | 115 | 120 | 125 | 130 | 130 |

The Laffey Matrix clearly illustrates that the rates charged by K&M are commensurate with the rates that could have been charged according to United States Attorney's Office. Based on the "Laffey Matrix" and the other authority provided to this Honorable Court in Plaintiff's Memorandum of Points and Authorities, the hourly rates sought by Plaintiff's attorneys are reasonable.

### 7.    IT IS DEFENDANT'S BURDEN TO ESTABLISH ANY REDUCTION IN ATTORNEYS' FEES.

It has generally been recognized in fee-shifting statutes that "a party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified." *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989), cert. denied, 493 U.S. 1071

MOTION FOR ENTRY OF DEFAULT JUDGMENT

(1990) (awarding $5,500,000 in fees on $3 recovery) cited in *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992).[6] *See Laura B. Bartell, Taxation of Costs and Awards of Expenses in Federal Court*, 101 F.R.D. 553, 560-62 (1984). The burden of proof is on the opponent to present specific evidence that a lower amount is appropriate. *See*, e.g, *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989); *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992) (fee opponent must submit evidence); and *Brinker v. Giuffrida*, 798 F.2d 661, 668 (3d Cir. 1986) ("[T]here is ordinarily no reason for a court to disregard uncontested affidavits of a fee applicant"). Accordingly, unless Defendant is able to meet its burden, this Court should accept Plaintiff's lodestar and award the attorneys' fees and costs sought.

## IV.   PLAINTIFF WILL SUFFER GREAT PREJUDICE IF RELIEF IS DENIED

The fourth *Eitel* factor to consider is whether Plaintiffs would suffer prejudice if this Honorable Court denied default judgment. Here, Plaintiff would be denied judicial resolution and would not have any other recourse against Defendant. *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177. Additionally, Defendant would not have an incentive to correct its behavior, and therefore would continue

---

[6] The lodestar figure represents reasonable hours times reasonable rate. *Blanchard v. Bergeron*, 103 L.Ed. 2d 67, 76 (1989) *quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 656 (1986).

to violate the law in an attempt to collect debts from consumers.   Therefore, Plaintiff would undoubtedly suffer great prejudice if relief is denied.

## V.   THE POSSIBILITY OF DISPUTED MATERIAL FACTS IS SMALL

The fifth *Eitel* factor focuses on the likelihood of disputed material facts in this case.  However, "upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Cal. Sec. Cans*, 238 F. Supp. at 1177.   Thus, because the clerk entered an order defaulting Defendant On December 8, 2010, "no genuine dispute of material facts would preclude granting Plaintiff['s] [M]otion." *Id.*

## VI.   DEFAULT LIKELY DID NOT RESULT FROM EXCUSABLE NEGLECT

It is highly unlikely that the default here was due to excusable neglect.  On November 10, 2010, Plaintiff properly served Defendant with a complaint and summons.  Then, on December 8, 2010, Plaintiff properly served Defendant with a Motion for Entry of Default.  Finally, on the date indicated in the attached proof of service, Plaintiff properly served Defendant with a Notice and Motion for Entry of Default Judgment.  Despite repeated notice, Defendant has failed to appear or defend this lawsuit. Therefore, the fourth *Eitel* factor weighs in favor of default judgment.

///

///

## VII.   PUBLIC POLICY FAVORS DEFAULT JUDGMENT

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  But, "this preference, standing alone, is not dispositive." *Cal. Sec. Cans*, 238 F. Supp. 2d at 1177.  Furthermore, "Defendant's failure to answer Plaintiff['s] Complaint makes a decision on the merits impractical if not impossible.  Under FRCP 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action."  *Id.*  Despite continued opportunities, Defendant failed to respond to or defend this lawsuit, and therefore, this last *Eitel* factor favors this Honorable Court to enter default judgment against Defendant.

## VIII. CONCLUSION

In order for Plaintiff to obtain default judgment against Defendant, Plaintiff must not only satisfy the requirements of FRCP 55(a), but Plaintiff must also prove the substantive factors outlined in *Eitel* favor default judgment.  Here, Plaintiff satisfied the requirements of FRCP 55(a), the factors outlined in *Eitel*.  Therefore, this Honorable Court should enter default judgment against Defendant in the amount of $4,567.50, itemized as follows: $2,000.00 in statutory damages to Plaintiff pursuant to the FDCPA, *15 U.S.C. 1692k(a)(2)A and Cal. Civ. Code §§1788.30(b) and 1788.32*; $2,217.50 in attorneys' fees and $350.00 in filing fees and costs pursuant to 15 U.S.C. §1692(k)(a)(3) and Cal. Civ. Code §1788.30(c).

WHEREFORE, Plaintiff, ERIN O'DONNELL, respectfully requests this Honorable Court to enter Default Judgment against Defendant, TAKHAR COLLECTION SERVICES, LTD., and to award Plaintiff $4,567.50.

DATED: January 4, 2011          RESPECTFULLY SUBMITTED:

By: /s/ James D. Pacitti
James D. Pacitti
Attorney for Plaintiff

- 20 -

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 10474 Santa Monica Blvd. Suite 401, Los Angeles, CA 90025.

On January 6, 2011, I served the following document(s) described as: **NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT** on all interested parties in this action by placing:

[ X ]  a true copy addressed as follows:

C T CORPORATION SYSTEM
c/o Takhar Collection Services, Ltd.
818 W 7TH ST
LOS ANGELES CA 90017

[X]    BY MAIL

[ X ]  I am readily familiar with the firm's practice for collection and processing correspondence for mailing. Under that practice, this document will be deposited with the U.S. Postal Service on this date with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[X]    STATE – I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 6, 2011, at Los Angeles, California.

By:  /s/ Christopher G. Addy
     Christopher G. Addy
     Krohn & Moss, Ltd
     10474 Santa Monica Blvd., Suite 401
     Los Angeles, CA 90025
     Tel: 323-988-2400 x271
     Fax: (888) 755-0945
     Email: caddy@consumerlawcenter.com

- 21 -